UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
BRIAN MOFFETT,

                Plaintiff,

  - against -

TOWN OF POUGHKEEPSIE, TOWN OF POUGHKEEPSIE
POLICE DEPARTMENT, POLICE OFFICER DOUGLAS
HAUSEMAN in his individual and official capacity, POLICE
OFFICER RAYMOND MARINO, in his individual and
official capacity, POLICE OFFICER LASZLO TOTH, in his
individual and official capacity, POLICE OFFICER JOHN
WEIGARD, in his individual and official capacity, POLICE
OFFICER GARY HULBERT, in his individual and official
capacity, POLICE OFFICER JOSEPH LOMBARDI, in his
individual and official capacity, POLICE OFFICER BRIAN
WALSH, in his individual and official capacity, POLICE
OFFICER ROBERT BURGER, in his individual and official
capacity, POLICE OFFICER MELCHIORRE BRUSCHETTI,
in his individual and official capacity, POLICE OFFICER
THOMAS KEITH, in his individual and official capacity,
POLICE OFFICER DAVID MULLEN, in his individual and
official capacity, and POLICE OFFICERS JOHN DOES 1-10,

                Defendants.
------------------------------------------------------------------------------x

**OPINION AND ORDER**
11-CV-6243 (ER)

Appearances:

Neil VanderWoude
Carmel, New York
*Attorney for Plaintiff*

David L. Posner
McCabe & Mack LLP
Poughkeepsie, New York
*Attorney for Defendants*

Ramos, D.J.:

Plaintiff Brian Moffett ("Plaintiff" or "Moffett") brings this civil rights suit pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, alleging violations of the Fifth and Fourteenth Amendments to the U.S. Constitution against Defendants Town of Poughkeepsie (the "Town"), Town of Poughkeepsie Police Department (the "Police Department")[1], and various named and unnamed Poughkeepsie Police Department Officers in their individual and official capacities (the "Officers," and collectively "Defendants"). Defendants have now moved to dismiss all claims in the Complaint—except for Plaintiff's § 1983 excessive force claim—pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff has failed to state any plausible claims of entitlement to relief. For the reasons discussed below, Defendants' motion to dismiss is GRANTED.

I. Factual Background

On September 13, 2008, Plaintiff had an argument with his girlfriend, Lydia Bachman ("Bachman"), at her Cornwall, New York residence, which prompted her to call 911. (Compl. ¶¶ 18-19.) Officer Gebert ("Gebert") of the Town of Cornwall Police Department responded to her apartment, but when he arrived, Plaintiff was no longer present. (*Id.* ¶ 22.) Bachman reported to Gebert that she and the Plaintiff had a domestic dispute. (Affidavit of David Posner ("Posner Aff."), Ex. B-2.) While Gebert was present in Bachman's apartment, Plaintiff initiated a phone call to Bachman's mobile phone. (Compl. ¶ 20.) He hung up immediately when he learned that police were present in her apartment, then sent her a text message and called her house phone. (*Id.*) While Bachman spoke to Plaintiff on her house phone, Gebert picked up

---

[1] Under New York law, the Town of Poughkeepsie Police Department is an administrative arm of a municipality and does not have a separate legal identity. *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999). Therefore, a police department is not a suable entity. Here, as Plaintiff has brought suit against both the Town and the Police Department, all allegations against the Police Department will be construed as against the Town.

Bachman's mobile phone to read the text message she had received from Plaintiff.  (*Id.* ¶ 21.) Bachman informed Gebert that she did not wish to press charges against Plaintiff, and only wanted him to stay away from her until he calmed down from their argument.  (*Id.*)

After their phone call, Plaintiff and Bachman did not speak to or see one another for the rest of that day.  (Compl. ¶ 22.)  Plaintiff drove to his mother's house in Poughkeepsie, New York, to spend the night there.  (*Id.* ¶ 23.)  Gebert, after leaving Bachman's home, contacted the Poughkeepsie Police Department to inform them of the dispute and that Plaintiff might be on his way to his mother's home in Poughkeepsie.  (*Id.* ¶¶ 24, 26.)  Gebert stated in his report to the Poughkeepsie Police Department that Plaintiff made threats in a text message to Bachman to do "suicide by cop," and that the police would not have enough firepower to stop him.  (*Id.* ¶ 25; Posner Aff., Ex. B-2.)

Later that evening, Officers Raymond Marino, Laszlo Toth and John Weigard, of the Poughkeepsie Police Department, spoke to Plaintiff's mother, Nancy Fritz ("Fritz") at her home. (Compl. ¶ 28.)  Officer Marino, a high-school classmate and longtime friend of Plaintiff's, spoke to him briefly on the phone, and reported that Plaintiff stated he would not be returning to his mother's home, but if the police came after him he would "take them out."  (*Id.* ¶¶ 28, 30; Posner Aff., Ex. B-2.)  Marino did not inform Plaintiff at that time that he was making a mental health assessment.  (Compl. ¶ 29.)  He also never directly observed Plaintiff.  (*Id.*)  Plaintiff "vehemently" denies that he threatened to "take out" the police in his conversation with Marino. (*Id.* ¶ 30.)  Poughkeepsie Police Department records reflect that Plaintiff had no known weapons in his possession.  (Posner Aff., Ex. B-2.)

In the early morning hours of September 14, 2008, a police car drove by Fritz's house and reported that Plaintiff's car was in the driveway, but made no mention of any activity or

3

other signs of emergency in the house. (Compl. ¶¶ 32-33.) Several hours later, an armed SWAT team surrounded the home and awakened Plaintiff and Fritz in an attempt to force Plaintiff to undergo a psychiatric evaluation. (*Id.* ¶¶ 34, 42-43.) Plaintiff negotiated with the officers to have his mother drive him to St. Francis Hospital for the evaluation, but upon leaving the house and walking to his car, Plaintiff was apprehended by several armed officers. (*Id.* ¶¶ 35, 38.) He alleges that he was slammed into the side of the home and the he was subsequently shot in the chest with TASER darts multiple times. (*Id.* ¶¶ 39, 40.) He was then handcuffed and transported to St. Francis Hospital, where he was evaluated and released after the medical staff determined that he was not a danger to himself or to others. (*Id.* ¶¶ 42, 43.) Plaintiff alleges that he sustained several open wounds as a result of the Officers' conduct and that he suffered from these traumatic injuries for days after the incident. (*Id.* ¶¶ 41, 46.)

Approximately two weeks later, on October 1, 2008, Plaintiff received a warrant for resisting arrest, for which he voluntarily surrendered. (*Id.* ¶ 44.) He was convicted at trial of resisting arrest, assessed a fine, and sentenced to three years of probation. (*Id.* ¶ 45.) Plaintiff has appealed his conviction. (*Id.*)

In the instant action, Plaintiff has sued the Defendants as a result of the aforementioned incident pursuant to 42 U.S.C. §§ 1981, 1983 and 1985. Plaintiff has, however, voluntarily dismissed his § 1981 claim, and Defendant has moved to dismiss all claims except for Plaintiff's § 1983 excessive force claim. The Court will thus address Plaintiff's only remaining claims that are subject to Defendant's motion to dismiss—the § 1983 municipal liability and false arrest claims, and the § 1985 conspiracy claim.

II. <u>Legal Standard for a Motion to Dismiss</u>

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In deciding a motion to dismiss, a court may consider facts alleged in documents attached to the complaint as exhibits or incorporated in the complaint by reference.[2] *Falso v. Ablest Staffing Servs.*, 328 F. App'x 54, at *1 (2d Cir. 2009) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996)). Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.

---

[2] In the instant matter, the Court determines that one of the proffered documents is incorporated in the complaint by reference: the Town of Poughkeepsie Police Department Blotter Record, which includes the information transmitted from Officer Gebert to the Poughkeepsie Police Department (Compl. ¶¶ 24-26) and the information Officer Marino reported after speaking with Plaintiff over the phone (Compl. ¶¶ 28-30), attached to the Affidavit of David Posner as Exhibit B-2.

2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Prince v. Madison Square Garden,* 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006); *see also Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions). A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

III. <u>Municipal Liability Pursuant to 42 U.S.C. § 1983 ("*Monell* Claim")</u>

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.*

A municipality cannot be held liable under § 1983 for the acts of its employees solely on a theory of *respondeat superior. Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom. *Id.* at 690-91. Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury. *Bd. of*

6

*Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *see also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*, 436 U.S. at 692).

The Second Circuit has established a two prong test for § 1983 claims brought against a municipality. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'" *Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id.*

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials, or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases). Plaintiff apparently relies on the first of these alternative bases to establish his *Monell* claim. Seeking to prove the existence of a policy

or custom that caused his constitutional injuries, Plaintiff alleges, upon information and belief, that:

- The Town has permitted and tolerated a *policy* of unjustified, unreasonable, and illegal uses of force against civilians by Officers of the Police Department;

- The Police Department has failed to maintain a proper system for investigation and review of incidents of use of excessive force, such that it has become the *policy* of the Town and the Police Department to tolerate improper beatings, illegal arrests, and other wrongful action;

- The Town maintains a *policy* to prepare incident reports that justify TASER use, regardless of whether such use was, in fact, justified;

- The Town maintains a *policy* to omit testimony of non-police officer witnesses and uncritically rely on the testimony of officers involved in a TASER incident, or to omit relevant information tending to contradict the statements of police officers involved in TASER use investigations;

- The Town maintains a *policy* for supervisors not to review TASER incident reports for their accuracy and to allow conclusions to be drawn on the basis of clearly incorrect information; and

- The foregoing acts, omissions, systemic flaws, and policies of the Town deprived Plaintiff of his constitutional rights under the Fifth and Fourteenth Amendements and was physically harmed.

(Compl. ¶¶ 63-70 (emphasis added).)  These allegations—made upon information and belief—are not supported by factual information that makes "the inference of culpability plausible." *Arista Records*, 604 F.3d at 120.  Without offering factual support for his allegations, this Court cannot "infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557.)

First, the Complaint lacks sufficient allegations to show the existence of a formally recognized policy or rule adopted by the Town.  Despite Plaintiff's repeated suggestion that the Town maintains various policies that led to his constitutional deprivations, he does not substantiate these allegations with sufficient facts about his or others' experiences that, if

8

accepted as true, would indicate the existence of a formal policy.  *See Johnson*, 2011 WL 666161, at *3.  Indeed, Plaintiff admits that "after a reasonable opportunity for further investigation or discovery," the facts alleged will likely gain evidentiary support.  (Compl. ¶ 66.) This the Court cannot permit; a plaintiff will not be afforded discovery when "armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.

Nor does Plaintiff satisfy the other possible bases of *Monell* liability.  Plaintiff fails to allege that any of the Officers have policymaking authority.  Only municipal officials who have "final policymaking authority" with respect to the activities that allegedly violated a plaintiff's constitutional rights "may by their actions subject the government to § 1983 liability."  *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (plurality opinion); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999) ("[T]he decisionmaker must be responsible for establishing *final government policy* respecting the particular activity [giving rise to Plaintiff's claims] before the municipality can be liable.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 479, 481 (1986)).  Plaintiff does not allege that *any* of the Officers are final policymakers for the Town nor does the Complaint contain any factual allegations from which such authority could be inferred.

Plaintiff also fails to sufficiently allege facts that demonstrate a consistent and widespread practice by the Town.  "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).  Plaintiff argues in his memorandum that there is another case currently pending in the Southern District of New York alleging that the Town maintains a policy or custom that deprives individuals of their constitutional rights.  (Pl.'s Mem.

9

at 11.)  But nowhere in Plaintiff's Complaint does such an allegation exist, nor any suggestion of how the two cases may together reflect the Town's practice of unconstitutional conduct.  This is simply not enough to give rise to § 1983 municipal liability.

Finally, Plaintiff does not allege any failure to train or supervise, let alone the deliberate indifference to the constitutional rights of citizens that a plaintiff must show before a municipality will be held liable on the basis of such a failure.  *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).  Therefore, Plaintiff has failed to satisfy the first prong of the municipal liability test and his § 1983 *Monell* claim against the Town must be dismissed.

IV. Conspiracy Claim Pursuant to 42 U.S.C. § 1985

To state a valid cause of action under § 1985(3)[3], a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 103 (1971)); *Whitehurst v. 230 Fifth, Inc.*, 11 Civ. 0767 CM, 2011 WL 3163495, at *5 (S.D.N.Y. July 26, 2011).  No explicit agreement need be proven; rather, a plaintiff can establish a conspiracy by demonstrating a tacit understanding to carry out the prohibited conduct at issue.  *Cine SK8, Inc.*

---

[3] Section 1985 provides, in relevant part, that:

> If two or more persons in any State or Territory conspire . . .  for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Although Plaintiff does not indicate in his Complaint that he has alleged a violation pursuant to subsection (3), it is the only portion of this statute that is conceivably applicable to the facts of this case, and the only portion of the statute that the parties address in their briefing to the Court.

10

*v. Town of Henrietta*, 507 F.3d 778, 792 (2d Cir. 2007) (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)).  Furthermore, in order to prove liability pursuant to § 1985(3), the conspirators must be motivated by some racial or otherwise class-based, invidiously discriminatory animus.  *Griffin,* 403 U.S. at 102; *Britt v. Garcia*, 457 F.3d 264, 274 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d. Cir. 1999)).

The Supreme Court included the racial or class-based animus requirement in order to prevent § 1985(3) from being interpreted to provide a broad federal remedy for "all tortious, conspiratorial interferences with the rights of others" and to limit the statute's reach to conspiracies that "aim at a deprivation of the equal enjoyment of rights secured by the law to all."  *Griffin,* 403 U.S. at 101-02; *see also Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992). Though § 1985(3) does not offer its protection to all classes of persons, *United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 832–33 (1983) (stating that animus based on the economic views, status, or activities of a class were beyond the statute's scope), a § 1985 class is by no means limited to classifications that would receive strict scrutiny under the equal protection clause.  *People by Abrams v. 11 Cornwell Co.,* 695 F.2d 34, 42 (2d Cir.1982), *vacated on other grounds,* 718 F.2d 22 (2d Cir. 1983).  Accordingly, the Second Circuit has interpreted § 1985(3) to include protection against conspiracies involving discrimination on the basis of mental illness or disability.  *Mazzocchi v. Windsor Owners Corp.*, 11 Civ. 7913 (LBS), 2012 WL 3288240, at *6 (S.D.N.Y. Aug. 6, 2012) (citing *Abrams*, 695 F.2d at 43).

Here, Plaintiff has made the following allegations:

- Defendants *conspired* to deprive the Plaintiff of his rights and jointly caused deprivation of such rights by acting in concert to unlawfully assault the Plaintiff;

- Upon information and belief, the Officers knowingly acted *in concert* with one another to assault and injure the Plaintiff with numerous applications of a TASER model stun weapon in the absence of any direct or indirect threat to their safety;

- Every Officer had complicity in the physical acts perpetrated upon Plaintiff and failed to intervene in order to prevent the escalation and continuance of the use of force upon Plaintiff;

- The Officers, separately and in concert, acted outside the scope of their jurisdiction, without authorization of law, acted willfully, knowingly, and purposefully with the specific intent to deny Plaintiff his constitutional rights, and *conspired* to harm Plaintiff; and

- By the foregoing acts, Officers denied Plaintiff due process and equal protection under the law.

(Compl. ¶¶ 74-78 (emphasis added).)  These allegations, however, fail to meet the requirements for stating a claim under § 1985(3).

First, Plaintiff fails to set forth specific facts in support of his claim that any Defendant engaged in a conspiracy.  Although alleging an explicit agreement is not required, Plaintiff does not allege facts that would support the inference that there was a tacit understanding to carry out the prohibited conduct.  *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988).  Plaintiff merely alleges one communication between the Cornwall Police Department and the Poughkeepsie Police Department—Gebert's communication to the Poughkeepsie Police Department reporting Plaintiff's domestic dispute with Bachman, stating that Plaintiff threatened to commit "suicide by cop," and advising that Plaintiff might be on his way to Fritz's home in Poughkeepsie.  (Compl. ¶¶ 24-26.)  This allegation, without more, lacks a "factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal citations and quotation marks omitted).  Furthermore, to the extent Plaintiff attempts to allege that various Poughkeepsie Police Department Officers conspired with one another, such a claim

would fail due to the "legal impossibility of pleading conspiracy by exclusive reference to actions of employees of a single corporation." *Farbstein v. Hicksville Pub. Library*, 254 F. App'x 50, 51 (2d Cir. 2007) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)). Plaintiff's vague and threadbare allegations of a conspiracy do not suffice, especially in a claim predicated upon discrimination. *Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist.*, 96-CV-4702 (JG), 2000 WL 134346, at *15 (E.D.N.Y. Feb. 1, 2000).

Second, even assuming, *arguendo*, that Plaintiff had alleged facts sufficient to establish the existence of a conspiracy, Plaintiff fails to allege in the Complaint that he is a member of a protected group or a class. *See Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 692 (S.D.N.Y. 1996) *aff'd, Puglisi v. Underhill Park Taxpayers Assoc.*, 125 F.3d 844 (2d Cir. 1997). Furthermore, the Complaint is utterly devoid of any facts that Defendants acted with class-based discriminatory animus, much less that they acted because of Plaintiff's mental illness or disability. *See Thomas*, 165 F.3d at 147. Although Plaintiff correctly argues in his responsive papers that discrimination on the basis of mental illness or disability comes within the ambit of § 1985(3) protection, he again fails to assert in his papers that he, in fact, suffers from mental illness or disability. (Pl.'s Mem. at 3.) Moreover, the suggestion that Defendants were motivated by animus against individuals with mental illness or disability does not appear in Plaintiff's responsive papers, either. Setting forth a § 1985 claim that is "couched in terms of conclusory allegations" simply will not pass muster. *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 185 (2d Cir. 1991), *cert. denied,* 502 U.S. 866 (1991). Having done nothing more, Plaintiff's § 1985 conspiracy claim must be dismissed.

V. <u>False Arrest Claim Pursuant to 42 U.S.C. § 1983</u>

In an apparent overabundance of caution, Defendant has argued that to the extent Plaintiff makes a false arrest allegation in his Complaint, such a claim must be dismissed.[4]  (Def.'s Mem. at 8.)  Plaintiff responds in his opposition papers that there was no probable cause to arrest Moffett and that his arrest was therefore unlawful.  (Pl.'s Mem. at 5.)  Despite Plaintiff's argument, nowhere in Plaintiff's Complaint is there a proper allegation for false arrest.  Rather, Plaintiff alleges, upon information and belief, that the Police Department maintains a policy of tolerating illegal arrests.  (Compl. ¶ 65.)  Such a threadbare assertion, without accompanying factual support, does not state a plausible claim to relief and is thus entitled to no weight by this Court.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *e.g. Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (stating that allegations pled upon information and belief must be accompanied with facts upon which the belief relies).

Plaintiff here is represented by counsel and so is not afforded any special consideration—as a *pro se* plaintiff would be—that would allow the Court to liberally construe the allegations in his complaint.  *Okoh v. Sullivan*, 441 F. App'x 813, 814 (2d Cir. 2011) ("[W]hile *pro se* complaints must contain sufficient factual allegations to meet the [*Iqbal*] plausibility standard, we afford *pro se* litigants special solicitude and will interpret their submissions to raise the strongest arguments that they suggest.") (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  But even to the extent that Plaintiff's false arrest claims could be construed as properly alleged, dismissal would still be appropriate.

---

[4] Defendant also makes a prophylactic argument concerning a purported abuse of process claim.  (Def.'s Mem. at 8.)  To the extent Plaintiff has adequately alleged such a claim, which Defendant disputes, Defendant argues it should be dismissed.  (*Id.*)  Plaintiff does not make any argument in his responsive papers that he, in fact, alleged an abuse of process claim in the Complaint.  The Court therefore assumes that no such claim was alleged.

A false arrest claim pursuant to § 1983 is "substantially the same" as a false arrest claim under New York law, *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992), which requires a plaintiff to demonstrate that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not privileged. *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)). Because the Fourth Amendment right of an individual to be free from unreasonable seizures—which includes the freedom from arrest without probable cause—governs a false arrest claim under § 1983, proof of the existence of probable cause is a complete defense. *Alvarado v. City of New York*, 453 F. App'x 56, 58 (2d Cir. 2011); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when the arresting officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. *Dunaway v. New York,* 442 U.S. 200, 208 n.9 (1979); *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987); *Gaston v. City of New York*, 11 Civ. 4750 (AJP), 2012 WL 1085804, at *5 (S.D.N.Y. Apr. 2, 2012).

The probable cause requirement extends to cases in which police officers seize a person for a psychiatric evaluation. *Hoffman v. County of Delaware*, 41 F. Supp. 2d 195, 209 (N.D.N.Y. 1999) *aff'd*, 205 F.3d 1323 (2d Cir. 2000). Specifically, the Fourth Amendment requires probable cause to believe that the person to be arrested is dangerous to himself or to others. *Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) (citing *Glass v. Mayas,* 984 F.2d 55, 58 (2d Cir.1993)); *accord Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir. 1997). Probable cause is also assessed objectively when the seizure occurs for purposes of a psychiatric

evaluation, and courts must consider the perspective of a reasonable person in the position of the seizing official, in light of all known facts and circumstances. *Estate of Heilbut ex rel. Rangel v. City of New York,* 04 Civ. 4332 (DLC), 2006 WL 2807722, at *4 (S.D.N.Y. Oct. 2, 2006) (quoting *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)); *Vallen v. Connelly*, 99 Civ. 9947 (SAS), 2004 WL 555698, at *7 (S.D.N.Y. Mar. 19, 2004) *aff'd*, 185 F. App'x 22 (2d Cir. 2006).

In the instant matter, accepting all factual allegations in the Complaint as true, *see Famous Horse Inc.,* 624 F.3d at 108, Defendants had probable cause to believe that Plaintiff was dangerous to himself or to others.  Plaintiff acknowledges that Bachman called the police after she and Plaintiff had an argument, she reported they had had a domestic dispute, and she wanted Plaintiff to stay away from her until he calmed down from their argument.  (Compl. ¶¶ 18, 19, 21; Posner Aff., Ex. B-2.)  Further, Officer Gebert reported to the Poughkeepsie Police Department that Plaintiff had threatened to do "suicide by cop" and that the police would not have enough firepower to stop him.[5]  (Compl. ¶ 25; Posner Aff., B-2.)  Based on the totality of the foregoing facts, Defendants had probable cause to believe that Plaintiff posed a danger to himself or to others.

Plaintiff argues that probable cause did not exist because the Defendants never conducted an "in-person assessment" before arresting the Plaintiff. (Pl.'s Mem. at 5-7.)  Despite Plaintiff's arguments to the contrary, however, a seizing officer need not conduct an "in-person assessment" in order to make a finding of probable cause.  Rather, an officer must reasonably apprehend a substantial chance of dangerous behavior in order to justify a seizure in the mental

---

[5] Plaintiff alleges that Gebert transmitted this message to the Poughkeepsie Police Department "maliciously and incorrectly." (Compl. ¶ 25.)  However, the information obtained by the Poughkeepsie Police Department is what gave rise to a finding of probable cause.  Even if it is true that he acted "maliciously and incorrectly," Gebert's alleged state of mind is immaterial to the inquiry whether Defendants had probable cause to arrest the Plaintiff.

health context. *Vallen*, 2004 WL 555698, at *9. This the Defendants did. Thus, even if Plaintiff's false arrest claim were adequately pled, which it is not, dismissal would be required.

## VI. Conclusion

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's third and fourth causes of action is GRANTED. As Plaintiff has voluntarily dismissed his first cause of action, the only claim that remains in this case is Plaintiff's second cause of action. No claims remain as to Defendants Town of Poughkeepsie or Town of Poughkeepsie Police Department, and they are hereby dismissed from this action. The remaining Defendants are directed to file an answer by September 14, 2012. The parties are directed to appear before the Court for an initial conference on Wednesday, October 17, 2012 at 11:00am. The Clerk of the Court is respectfully directed to terminate the motion (Doc. # 17.)

It is SO ORDERED.

Dated: August 29, 2012
       White Plains, New York

                                                                Edgardo Ramos, U.S.D.J.